### MORTON AND ANOTHER v. HUDSON AND OTHERS.

WHERE an assignment was made to secure among others, and by way of preference, a party who had promised to guaranty the debt of the assignor, but the promise was void, being by parol and without consideration; held, that the creditor could not avail himself of such guaranty.

Where a point has not been fully gone into before the hearing, and a case of suspicion or doubt arises, the court will sometimes put the matter in a train for further inquiry. But in general, the parties must abide by the evidence taken upon points put in issue.

January 20, 24.      *Mr. Saxton*, for complainants.

*Mr. Bonney*, for the defendants, except Spies.

THE ASSISTANT VICE-CHANCELLOR :—The complainants are simple contract creditors of the defendant,

Adams, and have filed their bill for various purposes.
First, to call the assignee to an account for monies re-
ceived under an assignment. Next, to have certain pre-
ferred debts in the assignment declared wholly fictitious,
or materially diminished; and lastly, to establish a claim
against Adams, the assignor, as well as Hudson, the as-
signee, for having covertly taken and disposed of more
property covered by the assignment, than they exhibit in
the inventory, or accounts furnished. The case naturally
divides itself according to the claims against the defendants,
separately.

The defendant Smith, is a preferred creditor, and his
claim is impeached. No other ground of relief is pre-
sented against him. The bill raises this issue alone, and
calls for an answer under oath. The complainant has
entered into proof to sustain his allegation, and the de-
fendant to refute it.

The answer is, in my opinion, explicit, full, and candid.
The notes given for the advances made from time to time,
chiefly in small sums, are in evidence, dated respectively,
October 28, 1837, and November 3, 1838. There is nothing
to impeach their genuineness. The payment of one hundred
dollars on account of the rent due by Adams, is fully
proven. It is also in proof, that Smith was the endorser
of the note held by Davenport and Quincy, for $207, and
I consider that the payment of $130 was made by him.
A new note was given for the balance. Thus every part
of this defendant's demand is free from difficulty, either in
fact or law, except the six hundred dollars arising from
the transaction with Gerding & Simeon. As to that, it
appears that Adams was for some time negotiating with
Gerding & Simeon, to effect an exchange of certain real
estate in Brooklyn, for goods. The consideration was
$6,200. There were mortgages to the amount of $5,500,
and the balance, $700, was to be paid for in goods.
Adams was at first supposed to be the owner, but Smith
was afterwards discovered to be such. A due bill was
given to Smith on the 23d of October, 1838, stating that
there was due him $700 worth of goods as selected by

Adams, and for which Smith endorses a receipt upon the memorandum, I suppose, subsequently. Mr. Simeon swears that the goods, (to the amount of $700,) were delivered to the defendant Adams.

All this corroborates the statement of the answer, that Smith was desirous of effecting an exchange of his property in Brooklyn, and promised Adams to aid him with goods for his store, if he could find him an opportunity to sell it. The answer states, that $400 of the consideration money were to be taken in goods, which was done, and transferred to Adams, who agreed to hold himself indebted for that amount.

There is a discrepancy between this statement and that of Simeon and the receipt, as to the amount of goods taken upon the sale. I do not think that this is enough to cast suspicion over the transaction. All the goods may have been delivered to Adams, although only $400 worth was retained for his use. At any rate, where every thing else appears fair and open, this circumstance ought not to be looked upon as more than a mistake of the actual consideration paid in goods.

In opposition to all the vouchers, the answers and testimony on the part of Smith, there is nothing but the vague statement of one witness, that he understood Adams to say that Smith owed him money. If he said so, he stated what cannot be believed. It is more charitable to presume a misapprehension.

But as to the balance of this demand, $200, a legal difficulty arises. Adams purchases from Gerding & Simeon that amount of goods. Afterwards, Smith told that firm he would guarantee the payment. A watch was retained of the value of $100, as security. The engagement of Smith was entirely by parol, and without consideration; and the witness, Simeon, says he looks to Smith for payment, from confidence in him.

It is undeniable that there is in this case no legal liability on the part of Smith to pay this debt. (*Jones* v. *Cooper*, *Cowper*, 227.) The question, then, is whether an assignor can secure a party for a voluntary responsibility which he

is not compellable to pay—or the question may be thus stated : whether the creditor of the assignor, though not a legal creditor of the party in terms secured, can avail himsef of the security.

My opinion is, that this cannot be allowed. Preferences by an insolvent, while they are tolerated, are not encouraged. They are regarded *strictissimi juris ;* and in this instance, it is only the actual debt lawfully due, or the actual responsibilities legally fixed upon Smith himself, which were secured. The right of holders of paper, where the endorser has been protected by an assignment, to intercept the funds, and have an immediate application to the debt, arises in cases of a strict liability of such endorser.

It is urged, however, by counsel, that a further inquiry should be directed in the master's office upon this claim as well as upon other matters. It is sufficient to say, that while the court sometimes, where a point has not been fully gone into before the hearing, and a case of suspicion or doubt arises, will direct a further inquiry, it cannot be done where the question has been distinctly put forth in the pleadings; an issue raised upon it, and testimony taken ; See *Richardson* v. *Smallwood, Jacob's Rep.* 556. *Holden* v. *Ream, Jurist,* vol. 1, p. 417, *Am. Ed.* The parties must abide by the case they have made out, unless the doctrine of opening testimony upon undiscovered proofs can be brought to bear.